lowered and raised the gates when necessary to do so; that he unloaded express and baggage once or twice a day sometimes—once or twice a day during the time he was there. Patrick Sheridan was the station agent there for the entire time. He did not give the witness any particular instructions in reference to that while he was there, nor when he was hired. Sheridan called Stickle whenever it was necessary to help with express and baggage. The method he used to call was to whistle and holler at Stickle, and sometimes beckon with his hand. Besides Sheridan, the baggageman, the expressman sometimes beckoned to Stickle about that duty, and on each of these occasions Stickle went and assisted. During the time Stickle was there, Sheridan was at the depot about 300 feet from the place where Stickle was working, and he was there in that same capacity while Cannon was working there. Occasionally Sheridan would ask Stickle to come up and help, beckon to him, and occasionally the express messenger would beckon to him. Stickle was also at times called to go when they had a number of packages, and was called when they were not only heavy, but a number of them, so that when they wanted to hurry along he was called in.

This is all of his testimony, and it is expressed in substantially his own language. Even if this additional testimony justified the learned court in its submission of the issues to the jury, which question we need not now decide, it seems quite clear to us that in view of the other testimony in the case, which has been discussed in our former opinions, it would have justified the trial court in setting the verdict aside.

On the first appeal the plaintiff insisted that it was not his duty as an employé of the railroad company to assist in removal of the express matter, and we reversed the judgment because we thought that the plaintiff was an emergency employé of the defendant, and therefore could not recover for the negligence of a fellow servant. Upon the second trial the plaintiff attempted to alter his complaint, his bill of particulars, and his proof, to sustain his contention that it was a part of his duty as the servant of the railroad company to assist in removing the express matter. But we thought that the evidence was not sufficient to take the case outside of the decision rendered upon the first appeal. Suffice it to say that we now think that the testimony of Stickle has not saved the plaintiff from the application of our former decision. Our reasons, if stated, would be but reiteration of the former opinions in this case.

The judgment and order are reversed, and a new trial is granted; costs to abide the event.

---

(81 Misc. Rep. 89.)

### In re WATSON.

(Surrogate's Court, Westchester County. May, 1913.)

1. TRUSTS (§ 277*)—CONSTRUCTION—ADVANCES—INTEREST.
    Where a will provides that the trustees shall advance to each of testator's sons what they deem advisable "out of the share to which he may ultimately be entitled to," and that "no personal claims shall be made

against such son or his estate for such advances," and where the trustees make such advances, no interest is chargeable upon the amount advanced; but, if the amount advanced to any son exceeds the amount to which he is entitled, the excess will be deducted from the balance of his share on a settlement of the accounts of the trustees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 396, 397; Dec. Dig. § 277.*]

2. TRUSTS (§ 270*)—CONSTRUCTION—COMPLIANCE WITH TERMS—SUBDIVISION OF ESTATE.

Where a will provides that the trustees should "invest each share separately" in trust for testator's nine children, the trustees should make such division immediately, though it is not in accord with their own judgment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 379; Dec. Dig. § 270.*]

3. TRUSTS (§ 270*)—COMPLIANCE WITH TERMS—SUBDIVISION OF THE ESTATE.

Where a will provides that the trustees shall subdivide testator's estate, they cannot withhold subdivision because a valuable tract of land remains unsold, and where they have neglected to make such subdivision prior to the judicial settlement of their accounts, and such subdivision is essential to an accurate administration of the trust funds, they will be required to forthwith divide the estate, so far as possible, pursuant to the directions of the will.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 379; Dec. Dig. § 270.*]

Judicial settlement of the accounts of the sole executor and trustee under the last will and testament of William Watson, deceased. Decreed according to opinion.

Decker, Allen & Storm, of New York City, for petitioner.

Edw. W. Davidson, of New Rochelle, for executors of estate of William Watson, Jr., deceased.

Jerome A. Peck, of New York City, special guardian.

SAWYER, S. William Watson died September 28, 1877, leaving a last will and testament, which was admitted to probate in the office of the surrogate of Westchester county.

By the ninth clause of his will the testator disposed of all his residuary estate. Said ninth clause is as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate, real as well as personal, including said farm, stock, cattle, horses, personal property and utensils, and the said house and premises number fifty-one East Thirty-Fourth street (subject to the life estate of my wife, as aforesaid) to my executors and trustees, and to the survivors and survivor of them, in trust, nevertheless, and to and for and upon the following uses, intents and purposes, and with the following powers of and concerning the same, that is to say, to sell and dispose of the same at public or private sale, for cash or upon credit, and convert the same into money and to execute and deliver good and sufficient conveyances and transfers of the same, so as to vest good title in the purchaser or purchasers thereof, and to divide the proceeds into as many equal shares as I shall leave children surviving me, and in case any of my children shall have died before me, leaving issue living at the time of my death, then the said number of shares shall be increased so as to include one equal share for each of such deceased children, and I give, devise and bequeath all of said equal shares of the proceeds of my said residuary estate to my said executrix, executors and trustees, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the survivors and survivor of them, in trust, nevertheless, and to and for and upon the following uses, intents and purposes and with the following powers of and concerning the same, that is to say, to invest each equal share separately in the same manner as hereinbefore directed, and to apply the rents, income and profits of the respective shares allotted to my daughters (surviving me) that is, one equal share for the benefit of each daughter, as follows: To the use of each daughter during her natural life, the rents, income and profits of her one equal share for her sole and separate use free from the debts, control and engagements of any husband she may at any time have, in the same manner and with the like effect as if she were a feme sole, and upon her death to divide, distribute and pay over the principal of her share (and I so give, devise and bequeath the same) to her children living at the time of her death and to the issue, then living, of any of her children then dead, to be equally divided between them, such issue to stand in the place of his, her or their parent; and in default of such children or issue, then to such person or persons and in such manner and form as she by any instrument in writing in the nature of a will or appointment executed under her hand in the presence of two witnesses notwithstanding her coverture, shall limit, direct or appoint, and in default of such limitation, direction or appointment then to my next of kin under the laws of the state of New York as if I had died intestate.

"And also to apply the rents, income and profits of the respective shares allotted, as aforesaid, to my sons surviving me, that is one equal share for the benefit of each son, as follows: To the use of each son the rents, income and profits of his one equal share until he shall attain the age of twenty-five years, or sooner die, and upon attaining that age, or if he shall have attained it before my death, to pay, transfer and deliver over (and I so give, devise and bequeath) to him one half of the principal of his one equal share, and to apply the rents, income and profits of the remaining half of his one equal share to his use until he shall attain the age of thirty-five years, or sooner die, and upon his attaining said age of thirty-five years to pay, transfer and deliver over (and I so give, devise and bequeath) to him the said remaining half of the principal of his one equal share, and in the event of his death before he would be entitled, as aforesaid, to the payment of the half or the whole of the principal of his one equal share, then to pay, transfer and set over (and I so give, devise and bequeath) the principal of his one equal share or so much thereof as may not have been paid to him, as hereinafter provided for, to his children living at the time of his death and to the issue then. living of any of his children then dead, to be equally divided between them, such issue to stand in the place of his, her or their parent, and in default of such children or issue, then to such person or persons and in such manner or form as he shall by his last will and testament execute after he shall attain the age of twenty-one years, limit or direct, and in default of such limitation or direction then to my next of kin under the laws of the state of New York as if I had died intestate.

"And also to apply the rents, income and profits of the respective remaining equal shares (if any) allotted, as aforesaid, to the issue (if any living at my death) of any of my children then dead, as follows: To the use of each class of issue equally the rents, income and profits of the share allotted to that class until the youngest of such class of issue living at my death shall attain the age of twenty-one years or sooner die, and upon such youngest issue attaining the age of twenty-one years or sooner dying, to pay, transfer and set over (and I so give, devise and bequeath) the principal of the share of such class to and among said last-mentioned issue equally, and to their heirs, executors, administrators and assigns.

"I feel a desire, not obligatory however, that my children, in case their pecuniary circumstances will warrant it, should reside upon portions of my said farm having dwellings thereon, or having building sites upon which they can erect buildings, therefore, in case my children respectively or any or either of them, shall elect, in writing, that portions or portion of my said farm shall form the whole or a part of their said respective shares or share in my estate at the fair value of such portions or portion to be fixed by my trustees and executors, the survivors or survivor of them, I authorize

the latter to set the same apart by an instrument in writing to be executed, acknowledged and recorded to the intent that the portion so set apart for each one shall represent a whole or a part (as the case may be) of his or her share and shall be held accordingly, subject to the aforesaid life estate of my wife therein, and subject to the trusts, uses and powers respecting the said share as herein contained should the portion · so selected, in any case, exceed in value (to be fixed as aforesaid) the amount of such child's share in my estate, the excess shall be paid or satisfactorily secured by such child to my estate; and in apportioning my farm to meet the election of my children the preference of choice shall be given first to my sons commencing with the eldest and so on successively down to the youngest, and then commencing with the eldest daughter and so on successively down to the youngest daughter.

"I expressly declare that the direction, hereinbefore contained, to sell my said house and premises on Thirty-Fourth street, and my farm, stock, cattle, horses, personal property and utensils, subject to the life estate of my wife, and the direction hereinafter contained, to sell my other real estate is not intended to control the executors and trustees as to the time when they shall make such sale, and they are authorized, in their discretion, to defer such sale to any time during the life of my wife, and it is my judgment, although not obligatory, that all sales of my real estate be deferred during the life of my wife in order to gain an increase of value."

By the eleventh clause of his will the testator empowered his trustees to make certain advances to his sons in *addition* to the provisions as set forth in the ninth clause of said will. Said eleventh clause is as follows:

"Eleventh. Inasmuch as it may be desirable to aid and assist my sons or some one of them in business I authorize and empower my executrix and executors, and the survivors and survivor of them, in their, his or her discretion should they, he or she deem it desirable for the interest and welfare of my sons or some one of them so to do, to advance from time to time to my sons respectively out of their respective shares to which they will probably or possibly be entitled under the provisions of this my will, a sum or sums not exceeding to any one son one-half of the amount that such son will probably or possibly be entitled to, as aforesaid, and in the event that such shares shall not ultimately go to such son, no personal claim shall be made against such son, or his estate, for the repayment of such advances."

By the fifth clause of the codicil to the will the testator specifically revokes a portion and also modifies a portion of the provisions of the ninth clause of his will. The fifth clause of the codicil is as follows:

"Fifth. In and by the ninth clause or article of my said will I directed my executors and trustees and the survivors and survivor of them, to pay, transfer and deliver over and I so gave, devised and bequeathed to my sons respectively, upon their respectively attaining the age of thirty-five years the remaining one-half of the principal of the respective shares of my residuary estate allotted to my sons respectively, and made provision for the disposition of the said remaining half of the said principal in the event that either or any of my sons shall not attain the said age of thirty-five years as will more fully appear by reference to the said ninth clause or article. Now, I revoke the said directions, gifts, devises and bequests in respect to the said remaining half of the principal of the said respective shares of my residuary estate so allotted to my sons as aforesaid and direct my executrix, executors and trustees and the survivors and survivor of them to apply the rents, income and profits of the said remaining half of each of said shares of my residuary estate to the use of the son to whom, or for whose benefit the share is allotted, as aforesaid, during the term of his natural life and upon his death to pay the principal of the said remaining half of the said share to his children living at the time of his death and to the issue, if any, then living of any of his children then dead, to be equally divided between them,

such issue to stand in the place of the parent, and in default of such children or issue then to such person or persons and in such manner or form as he (my son) shall by his last will and testament, duly executed after the age of twenty-one years, limit or direct and in default of such limitation or direction then to my next of kin under the laws of the state of New York, as if I had died intestate, and I hereby revoke so much of the ninth clause or article in respect to the remaining half of the principal of the said shares, respectively, so allotted to my sons as is inconsistent with, or in conflict with this fifth clause or article of this codicil."

By the ninth clause of his will he gave his residuary estate to his executors and trustees, in trust, to sell and dispose of the same and to divide the proceeds into as many equal shares as he should leave him children surviving. The trustees were to invest each share separately and apply the income to the use of the son or daughter for whom it was set aside. Each daughter was to have a life use of such share, and the principal was to be paid over upon her death to her children or to her appointees by will. Each son was to receive one-half of the principal of his one-ninth share when he became 25 years of age, and, by the codicil to the will, the other one-half of his share he was to have a life use of, the same to be paid over to his children or his appointees under his will at his death.

By the eleventh clause of the will permission is given to the trustees to make certain advances to the sons which in their discretion they may deem necessary. Such advances, however, are limited to an amount "to which they will probably or possibly be entitled to under the provisions of the will." Such advances to any one son, however, not to exceed "one-half the amount that such son will probably or possibly be entitled to," but, in the event that such advances or shares shall not ultimately go to such son, "no personal claim shall be made against such son or his estate for the repayment of such advances."

The testator left nine children, four sons and five daughters. He also left a widow who died in 1894, and that portion of the property of which she was left a life use is now a part of the residuary estate. The parties contesting this accounting are the executors of William Watson, the younger. As such executors they are entitled to whatever there is left in the one-ninth fund which was to be set apart for William Watson, the younger, including principal and income. Each of the four sons had been paid about $130,000 out of the principal as and for the one-half of the one-ninth share of said estate devised and bequeathed to him by said testator. See former decrees in this estate.

Manifestly under the terms of the will William Watson, the younger, when he became 25 years of age, was entitled to receive immediately one-half of the one-ninth, or one-eighteenth, of his share of the residuary estate as an absolute matter of right. The payment of $130,000 was made to said son as the approximate amount of said one-eighteenth share. Whether such payment was in excess of the sum he was entitled to as such share or not is a mere question of computation, but, assuming that it was in excess of such one-eighteenth share, then the trustees could, if they deemed it advisable, advance any portion of the one-ninth of said share to which William or his estate might

be ultimately entitled to pursuant to the provisions of the eleventh clause of the will.

[1] If the eleventh clause of the will means anything, it must mean what it says, namely, that the trustees are given the right to estimate the amount of the estate and advance to each son what they may deem advisable "out of the share to which he may ultimately be entitled to." This the trustees have done. They estimated the value of the estate and paid over to each son $130,000 as his estimated one-eighteenth share. If this estimated amount exceeds the one-half of the one-ninth share to which each son will be ultimately entitled to, then and in that case "no personal claim shall be made against such son or his estate for the repayment of such advances."

I am of the opinion that the trustees in estimating and advancing the sum of $130,000 merely carried out the provisions of the ninth and eleventh clauses of the will, and that no interest should be charged by the trustees on this amount so estimated and advanced. Of course, if the $130,000 so advanced ultimately exceeds one-eighteenth of William's trust fund, then and in that case William's trust fund would be one-ninth of all of the estate, less said advance of $130,000.

A casual examination of the prior decrees seems to show that the four sons were advanced by the trustees under the same provisions of the will an additional sum of $28,000 each. If this is found to be so upon a more careful examination of the same, the same rule would apply to the advance of $158,000 as has been applied to the advance of $130,000.

[2] It was the duty of the trustees to have obeyed the directions of the ninth clause of the will "to invest each share separately" in trust for the nine children upon the trusts provided for. Whether or not the trustees should have made the division of the trusts into nine separate trusts before or after the death of the widow of William, the elder, is not necessary here to determine. The division should have been made without the shadow of a doubt at the commencement of this accounting period. The trustees cannot substitute their own judgment nor the decree of a court as a bar to the right for an immediate compliance with the terms of the will. Each trust has an undivided interest in the real estate. Each trust might have been represented by a separate trustee, and, if so, each would have an equal undivided interest with the others in both the personalty and realty. See Surrogate Silkman's opinion April 14, 1903.

[3] It is possible to make an accurate subdivision now of nearly all of the property on hand, and it should be done. If trustees can withhold subdivision because a valuable tract of land remains unsold, they could continually refuse to make any subdivision if a small or insignificant tract of land should remain unsold. What the testator intended by his will was that the principal of his estate should be divided into nine equal parts and both principal and income paid over agreeably to the terms of the will. In order that the trust funds may be administered accurately, the decree should provide that the trustees forthwith divide the estate in so far as the same is capable of subdivision into separate trusts, as is directed by the will.

The contestants being now entitled under the terms of the will to all of the one-ninth share, except such portion as has been conveyed or assigned by them, they may make any arrangement or agreement with the trustees that they see fit as to their share. If they desire to force or compel a sale of all the real property, they may do so; or if they desire by agreement to allow the trustees to manage and control the same, they may do that. As to the remaining trusts, there is no occasion that I can see for leaving the property "en block," and a division of the same should be made forthwith agreeably to the provisions of the will. If the trustees will consider the property in their possession as capable of subdivision the same as if it had been divided into nine equal trusts and will divide the principal and income accordingly, I think there will be no trouble in determining the respective amounts to which each party is entitled, as it seems to me it would be simply a matter of computation. If the parties cannot agree to the adjustment of the figures upon the basis suggested, they may each submit a statement as to what their claim is and what the figures should be and the court will adjust them.

Decreed accordingly.