a "preceding accident," and in consequence thereof subsequent exposure to the sun's rays or excessive heat, followed by the disease known as sunstroke, to come within the terms of this policy, then the clause in question would add little or nothing to the previous binding force of the policy, for the reason that the indemnity would be not for the sunstroke independently considered, but for the accident which preceded it, and for everything resulting therefrom, including such sunstroke. If the language is vague and indefinite, it must be construed most strongly against the insurer. Schumacher v. Great Eastern C. & I. Co., 197 N. Y. 58, 90 N. E. 353, 27 L. R. A. (N. S.) 480; Paul v. Travelers' Ins. Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758.

We think, therefore, that upon the evidence in this case the learned trial court would have been justified in leaving to the jury as the only question of fact in the case the question whether plaintiff did suffer a sunstroke. The fact that it was also left to the jury to say whether he suffered a sunstroke "within the meaning of this article 6 of the policy," which had just been read in their hearing, in view of their verdict, presents no ground of error. In this view of the case the exceptions taken to the charge require no consideration.

The judgment and order should be affirmed, with costs. All concur.

---

In re WATSON.

(Supreme Court, Appellate Division, Second Department. July 31, 1914.)

WILLS (§ 527*)—CONSTRUCTION—ACCOUNTING—INTEREST CHARGEABLE.

Testator bequeathed the residue of his estate to his executors, with power to sell and divide the proceeds into as many shares as there should be children surviving, and then empowered them to invest each equal share separately, to apply the proceeds to the use of each daughter for life, to apply the income to the use of each son until he was 25 years of age, and then pay over to him one-half of the principal of his one equal share, the profits of the remaining half to be paid to each son for life. Testator left four sons surviving. At his death three of his sons, including W., who had already attained the age of 25 years, each received $130,000, though the net personal property in the residuary estate was only $731,-751.27. A subsequent sale of a portion of the realty increased such residuary fund so that the shares payable to the sons exceeded the amount of the payments originally made to them. *Held*, that the provision for the payment to each son of his "one equal share" meant one equal share of the whole residuary estate, real as well as personal, and that hence W. was absolutely entitled to the payments made to him on account of his share, and no interest could be charged against him therefor.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1140; Dec. Dig. § 527.*]

Appeal from Surrogate's Court, Westchester County.

In the matter of the judicial settlement of the account of Henry R. C. Watson, as sole surviving executor and trustee, etc., of William Watson, deceased. From a part of the decree, Henry R. C. Watson, as sole surviving executor and trustee, etc., appeals. Affirmed.

See, also, 81 Misc. Rep. 89, 142 N. Y. Supp. 1058.

Argued before JENKS, P. J., and BURR, RICH, STAPLETON, and PUTNAM, JJ.

James J. Allen, of New York City, for appellant.
Edw. W. Davidson, of New Rochelle, for respondents.

STAPLETON, J.   William Watson, the elder, died in 1877, leaving a will and codicil by which he disposed of all his real and personal property.  By the ninth clause of the will he bequeathed the residue of his estate, real as well as personal, to his executors and trustees, with power to sell the same, convert it into money, and divide the proceeds into as many shares as there should be children him surviving.

The executors and trustees were empowered to invest each equal share separately; to apply the rents, income, and profits to the use of each daughter during her natural life, and to divide and pay over the principal of each share to her children living at the time of her death; to apply the rents, income, and profits to the use of each son "until he shall attain the age of 25 years, or sooner die, and upon attaining that age, or if he shall have attained it before my death, to pay, transfer and deliver over (and I so give, devise and bequeath) to him one-half of the principal of his one equal share"; to apply the rents and profits of the remaining half of his one equal share to his use until he should attain the age of 35 years, and upon his attaining that age to pay, transfer, and deliver over to him the remaining half of his one equal share.  In the last paragraph of the ninth clause he says:

"It is my judgment, although not obligatory, that all sales of my real estate be deferred during the life of my wife, in order to gain an increase of value."

By the fifth clause of the codicil he revoked the devise and bequest to each son of the remaining one-half share of the principal upon attaining the age of 35 years, and directed his executors and trustees to pay to each son, during the term of his natural life, the rents, income, and profits of such one-half share, with further provision in the event of the death of the sons.

The eleventh clause of the will provided:

"Inasmuch as it may be desirable to aid and assist my sons, or some or one of them, in business, I authorize and empower my executrix and executors * * * to advance, from time to time, to my sons respectively, out of their respective shares to which they will probably or possibly be entitled under the provisions of this my will, a sum or sums, not exceeding to any one son one-half of the amount that such son will probably or possibly be entitled to, as aforesaid, and in the event that such shares shall not ultimately go to such son, no personal claim shall be made against such son, or his estate, for the repayment of such advances."

By the tenth clause of the will he authorizes his executors to sell any part and parts of his estate, real and personal, at any time.

The testator left a widow and nine children him surviving.  Of the children, four were sons and five were daughters.

The widow died in 1894.  During her life the real property was kept intact, probably in conformity with the testator's wish expressed

at the end of the ninth clause. The real property remained partly unsold at the date of the present accounting.

The testator appointed his wife, two sons-in-law, and all of his sons executors and trustees under the will.

The personal estate aggregated $1,784,360.18. There was substantial and valuable real estate. At the time of the first accounting, the net personal property in the residuary estate was $731,751.27. At the testator's death, three of his sons, William, Robert, and Francis, had already attained the age of 25 years, and each immediately received the sum of $130,000.

The first account, verified by William, Robert, and Francis and other executors, and filed in 1886, nine years after the death of the testator, asked credit for amounts paid to the sons on account of their respective shares of the residuary estate. In that account they say:

"We also charge ourselves with the following sums paid by the following named persons in order to equalize division of income."

Then follows a schedule of payments by William, Robert, and Francis, representing, in each case, interest at the rate of 4 per cent. upon the $130,000 paid to each.

When the first account came on for judicial settlement, a special guardian of certain interested minors objected to these payments of interest on the ground that they were inadequate and insufficient and that the rate should have been 5 per cent. per annum "in order to fairly equalize divisions of income," but the objection was overruled by the surrogate. The second and third accounts show similar payments of interest. Upon the settlement of the third accounting, it was decreed:

"It appearing that the rate of interest charged on the several advances heretofore made * * * has been at the rate of 4 per cent. per annum, while the rate of interest charged on like advances to testator's grandchildren and others has been at the rate of 5 per cent. per annum, it is ordered that the rate of interest charged on the respective advances of $130,000 * * * be increased from 4 per cent. per annum to 5 per cent. per annum during the five years from 1897 to 1902, embraced in this third accounting, and that the sum of $6,500, being the extra interest of 1 per cent. per annum for five years on the respective advances to each of said sons, shall be collected by the said executors and trustees."

It was further decreed that, in all cases where a son or grandchild of testator had received an excess over his share or portion of the testator's personal estate, the person who had received such excess should be charged with interest thereon at the rate of 5 per cent. per annum up to the time it should be paid or adjusted.

Since the last decree, a period was reached when, through the sale of a portion of testator's real property, the capital of the trust fund was so increased as to exceed the amount of the payments originally made to the sons.

Upon the present accounting, the respondents here, who are the legal representatives of William Watson, the younger, deceased, one of the sons of the testator, interposed an objection to the imposition of interest accruing before the trust fund was so increased. The objection

was sustained by the surrogate, who decreed that the respondents' testator, William Watson, the younger, was absolutely entitled to the payments made to him on account of his share of the residuary estate, and that no interest might be charged against him during the present accounting period or any period thereafter on said sums or any part thereof, and directing the other beneficiaries to pay back out of their income enough to make up the amount of interest charged against the objecting party. It is from these parts of the decree that this appeal is taken by the accounting executor. The question to be determined is: Did the surrogate decide correctly?

The testator said unequivocally that, if any son should have attained the age of 25 years at the time of the testator's death, such son should thereupon be paid the "one-half of the principal of his one equal share." He did not say that such son should receive a moiety of his "one equal share" of the personalty only, and the inference is plain that the "one equal share" alluded to was a one-half equal share of the whole residuary estate, real as well as personal. More than this William, the younger, did not receive.

If, immediately after the testator's death, the real property had been sold and the whole estate thus converted into personalty, no question of interest upon the sum of $130,000 paid to William would have been raised. By the express terms of the will, William, the younger, was entitled to one-half of his share at the time he received it. The remaining legatees had no claim upon it. It was his absolutely.

In conformity with the wish of the testator, the sale of the realty was deferred in the hope that it would enhance in value. That hope fructified, and all of the legatees profited by the forbearance. Because of that forbearance, equally profitable to all, why should those who were not sooner entitled to benefit be awarded interest on the money that was rightfully paid to William?

The provision in the eleventh clause of the will, providing for advancements to the sons, should not be confounded, as I think the surrogate in his opinion has confounded it, with the provision in the ninth clause for the payment of shares. The ninth clause provides for the payment of certain shares to the sons upon their arriving at a designated age; the eleventh clause, which of course was written without regard to the codicil and which to an extent the codicil modifies, provides for the advancement to them before arriving at the designated age, and, to meet the exigencies of business, a sum or sums in anticipation of the share to which they would become entitled upon arriving at the designated age. Advancements under the latter clause might properly be chargeable with interest from the date of the advancement to the time when his right to his share matured. The facts show that there was no resort to the eleventh clause of the will at any time during the administration of the estate. The decree in the former accounting proceedings presents no bar to the proper decision of the question raised upon this accounting. Bowditch v. Ayrault, 138 N. Y. 222, 231, 33 N. E. 1067; Matter of Hoyt, 160 N. Y. 607, 618, 55 N. E. 282, 48 L. R. A. 126; Rudd v. Cornell, 171 N. Y. 114, 130, 63 N. E. 823.

The conclusion of the surrogate was right, and the decree of the surrogate's court of Westchester county should be affirmed, with costs to the respondents, payable out of the estate. All concur.